{¶ 94} I respectfully dissent from the majority regarding the eighth assignment of error: consecutive sentences. One of the required criteria for imposing consecutive sentences is a finding by the court that consecutive sentences are necessary to protect the public from future crime or to punish the offender * * *." The statute this language is tracking states these two required findings as alternatives. The trial court made both findings. If the court articulates two findings, however, then the court should provide supporting facts for each. A reviewing court that accepts anything less would encourage the lower court to name all the possible factors and leave a reviewing court to find some support somewhere among the facts presented. Such a practice should be discouraged.
 {¶ 95} In the case at bar, the court failed to clarify specifically which facts it selected to support each criterion. Moreover, before providing its rationale, the court proceeded to add yet another finding: "consecutive sentences are not disproportionate to the conduct or the danger the offender poses here." Then the court provided its rationale: "Gunshots were fired. One young man was killed another one was almost killed." Next, the court restated the last criterion: "Not disproportionate, life imprisonment is not disproportionate." Life imprisonment, however, was the sentence on count one, not count two. Thus the court appears to be stating the rationale for the length of the sentence for count one, whereas the question to be addressed is whether the sentence for count two should be consecutive. The court then proceeded to move to yet another criterion: "That, and the harm to this community and what it caused is so great that a single term will not adequately reflect the seriousness of the conduct, and also the lack of remorse shown, the lack of cooperation shown."
 {¶ 96} The court concluded: "a minimum sentence would demean the seriousness of the offense. Accordingly, with respect to Count 2, it is the sentence of this Court that the defendant be incarcerated in the Lorain Correctional Institution for a period of five years. Sentence to be served consecutive to the sentence in Count 1."
 {¶ 97} Because the facts are hedged between different statutory criteria, it is not clear which findings the facts are selected to support. It could be argued that the facts support both, but it is not the task of a reviewing court to make such speculations. Moreover, in the process of shifting back and forth, the court never explained its rationale for a finding of "harm to the community." As a result of the way in which the trial court structured its analysis, the court failed to align its reasons with its findings.
 {¶ 98} Very recently, the Supreme Court of Ohio stated that "a trial court must clearly align each rationale with the specific finding to support its decision to impose consecutive sentences. These findings and reasons must be articulated by the trial court so an appellate court can conduct a meaningful review of the sentencing decision. Griffin Katz, Ohio Felony Sentencing Law, supra, at 458-459, Section 1.21."State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165 ¶ 21. (Emphasis added.) The necessary alignment between criteria and facts did not occur in the case at bar.
 {¶ 99} The major change that the new sentencing bill made was eliminating any presumption of regularity. Before, "a silent record was construed by appellate courts to support the judge's sentence." Griffin Katz, supra., Section 1.20. Now, the trial court must explicitly address the statutory requirements. "* * * [T]he statutory language is intended to direct a process of analysis * * *." Griffin Katz, supra. 1.21. This analytic process is a reasoning process that moves from operative facts to the various criteria justifying a sentence. It is not enough to recite facts and criteria. What is essential is the reasoning process that connects the two. This process requires a positive explanation of the criteria the court used. The current sentencing statutes place this burden — and I appreciate it is a significant one — on the sentencing judge. In order for the appellate court to do its job in reviewing a sentence, the trial court must provide that nexus between the operative facts and the criteria selected to determine a consecutive sentence. The new statutory scheme for sentencing has made it quite clear that imposing consecutive sentences is an extraordinary punishment. The analytical procedure for explaining such an extraordinary sentence, therefore, should be carefully observed. It was not in the case at bar.
 {¶ 100} There are, furthermore, substantial problems with the two additional reasons the court cites: "lack of remorse and failure to cooperate." Earlier, the trial court explained that defendant "refused to cooperate" with the probation department's preparation of a pre-sentencing report. The only way the court knew of this refusal to cooperate is from the pre-sentencing report itself, which the court struck. Further problematic is how the court arrived at "lack of remorse." There is no basis in the record for this finding since the defendant never testified.
 {¶ 101} In fact, the court expressly said: "This Court must note for the record that the defendant failed to cooperate with the Probation Department in any way, shape or form so this Court has no knowledge of his background other than that provided by counsel-excuse me, by an attorney who was hired and did an investigation at which time this was a death penalty case." The question then is, upon what facts did the trial court base its finding that defendant showed a lack of remorse? It could not have been based upon defendant's background because the court admitted it had no knowledge of his background other than what counsel provided.[33]
 {¶ 102} On the other hand, a mitigation specialist provided considerable information about defendant's background that offered a solid basis for limiting his prison term. The specialist reported that at the age of 12 defendant was sexually abused by a man his father subsequently shot and killed-a crime for which his mother was also convicted. They were still incarcerated at the time of the hearing. Bereft of parents, he went to live with an aunt in Montgomery, Alabama for four and one-half years. The school records reflect no discipline problem or any infractions during those years. He regularly attended church, participated in the church choir and a church youth group, and was instrumental in forming a bible study group that met every Saturday for three years. Moving to East Cleveland at age 17, however, defendant lived with a family in which alcohol was rampant, and he no longer attended church or school.
 {¶ 103} One church minister with a degree in criminal justice who had worked two years in the Alabama Department of Youth Services wrote that it would be "totally out of his character" "to intentionally hurt someone." Letters from a Deacon similarly focus on the defendant's fundamental goodness. Making the same observation, his Pastor added that surrounding defendant with positive people will give him guidance in theright direction. Making his sentences consecutive totally ignores this information about his background.
 {¶ 104} There is nothing in the record upon which the trial court could infer a lack of remorse unless it was from his "lack of cooperation" regarding the pre-sentencing report and that lack was learned only through the report itself, which the court struck from the record. This inference presents yet another problem even more important. The defendant chose not to testify either at the trial or at sentencing. His counsel clearly indicated on the record that defendant's silence was upon counsel's advice. That right to remain silent at trial would be a sham if it did not continue through to the probation department's interview for purposes of providing a report to be used at sentencing.
 {¶ 105} Providing even stronger support to defendant's right to remain silent in this case is the fact that he had another casependingthat arose from the same date and circumstances. Clearly, he could not be required to answer questions that might incriminate him in the other case. In fact, his counsel stressed this very point. If he cannot be required to answer such questions, his silence cannot be used to increase his punishment, any more than it could be used to convict him. Inferring from his "refusal" or "failure" to cooperate that defendant lacked remorse violated his Fifth Amendment rights just as much as if there were a statement in court about his silence. His right to remain silent must extend to any request by the Probation Department. Indeed, the entire appeal process would be a sham if a defendant's silence to protect a later appeal were permitted to be held against him.
 {¶ 106} Primarily because of this Fifth Amendment violation, but also because of the lower court's failure to provide reasons clearly aligned with each statutory criterion, I must dissent, from the majority decision affirming the lower court sentence of consecutive sentences.
[33] And counsel expressly said, "On advice of counsel, Steve Cottrell has remained silent but he certainly has shown remorse for the family of Larry Calloway and all their members."